# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

YVONNE GREEN, WILMINGTON
PAIN & REHABILITATION CENTER,
and REHABILITATION ASSOCIATES,
P.A., on behalf of herself and all others
similarly situated,

        Plaintiffs,

        v.

GEICO GENERAL INSURANCE
COMPANY,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N17C-03-242 EMD CCLD

Submitted: January 31, 2018
Decided: April 24, 2018

*Upon Defendant GEICO General Insurance Company's Motion to Dismiss*
***GRANTED in part DENIED in part***

Richard H. Cross, Jr., Esquire, Christopher P. Simon, Esquire, Cross & Simon, LLC, Wilmington, Delaware, *Attorneys for Plaintiffs Yvonne Green, Wilmington Pain & Rehabilitation Center, and Rehabilitation Associates, P.A.*

Paul A. Bradley, Esquire, Maron Marvel Bradley Anderson & Tardy, LLC, Wilmington, Delaware, George M. Church, Esquire, Miles & Stockbridge P.C., Baltimore, Maryland, Meloney Perry, Esquire, Perry Law, P.C., Dallas, Texas, *Attorneys for Defendant GEICO General Insurance Company*

**DAVIS, J.**

## I. INTRODUCTION

Yvonne Green, Wilmington Pain & Rehabilitation Center ("WPRC"), and Rehabilitation

Associates, P.A. ("RA") sued on behalf of themselves and all others similarly situated

(collectively "Plaintiffs"). The Plaintiffs filed suit against Geico General Insurance Company

("Geico"). Plaintiffs allege that Geico uses two computerized rules (collectively, the "Rules") to evaluate insurance claims submitted by insureds to Geico. Plaintiffs argue that the Rules analyze these claims without actually evaluating the substantive facts underlying the claim.

Geico moves to dismiss Plaintiffs' claims, urging the Court to follow the reasoning used by the United State District Court for the District of Delaware when decertifying a similar class. Geico argues that the Court cannot certify a class in this case because individual issues will predominate the case regarding damages. Additionally, Geico argues that the Plaintiffs' allegations fail to state a claim for which relief can be granted.

For the reasons set forth below, the Court **GRANTS in part and DENIES in part** without prejudice the Motion.

## II. RELEVANT FACTS[1]

### A. GEICO'S CLAIMS PROCESSING

Plaintiffs' case challenges GEICO's process for evaluating personal injury protection ("PIP") claims submitted to GEICO by its insureds. Under Delaware law and pursuant to GEICO's contractual obligations, after an insured submits a proof of loss, GEICO must repay all "reasonable and necessary expenses incurred within two years from the date of the accident."[2] This includes compensation for medical and hospital services.[3] In evaluating PIP claims, GEICO relies on the Rules that purportedly analyze all claims the same way, regardless of the facts giving rise to the underlying claim.[4] These Rules are the source of the present litigation.

---

[1] Unless otherwise indicated, the facts provided in this Opinion are the facts alleged in the Amended Complaint filed by Plaintiffs. For purposes of Geico's Motion (as defined below), the Court must view the Amended Complaint's alleged facts in a light most favorable to Plaintiffs. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[2] Am. Compl. ¶¶
[3] *Id.*
[4] *Id.* ¶¶ 13-31.

2

The first rule at issue is the Geographic Reduction Rule (the "GRR").[5]  Under the GRR, GEICO sets an arbitrary cap at the "80th percentile" of other claims submitted to GEICO within a particular geographic region.[6]  As a result of the GRR, 20% of bills submitted to GEICO for reimbursement are automatically deemed "unreasonable," without inquiry into the facts giving rise to the claim or any factors that could impact pricing.[7]  Based on this, Plaintiffs allege that the GRR is, in effect, a secret cap on what GEICO will pay.[8]

The second rule at issue is the Passive Modality Rule (the "PMR").[9]  Under the PMR, GEICO automatically denies payment for certain "passive modalities" when treatment occurs more than eight weeks from the date of the automobile accident.[10]  GEICO enforces the PMR without making any inquiry into the facts or treatment to determine if treatment is appropriate.[11]  Based on this, Plaintiffs allege that the PMR is, in effect, a secret policy exclusion on what GEICO will pay.[12]  Additionally, GEICO does not disclose its claims handling policies, the GRR, or the PMR to its insureds.[13]

## B.    PLAINTIFFS SUBMITTED PIP CLAIMS TO GEICO

On September 12, 2011, Ms. Green was injured in a car accident.[14]  After receiving medical treatment, Ms. Green, as an individual insured, submitted her medical bills to GEICO for repayment under her PIP policy.[15]  In processing her claims for PIP benefits, GEICO used the

---

[5] *Id.* ¶ 13.
[6] *Id.* ¶ 15.
[7] *Id.* ¶ 14.
[8] *Id.* ¶ 84.
[9] *Id.* ¶ 22.
[10] *Id.*
[11] *Id.* ¶ 23.
[12] *Id.* ¶ 86.
[13] *Id.* ¶¶ 83, 85.
[14] *Id.* ¶ 44.
[15] *Id.* ¶¶ 44-48.

GRR and PMR.[16]  As a result, GEICO denied payment of covered PIP benefits to Ms. Green without, according to Plaintiffs, reasonable justification.[17]

Similarly, WPRC and RA, as assignees of their insured patient's claims, submitted claims to GEICO for processing and payment for treatment they provided.[18]  When WPRC and RA submitted claims to GEICO directly, GEICO treated WPRC and RA as claimants under the insured's policy.[19]  In processing WPRC and RA's claims for PIP benefits, GEICO used the GRR and the PMR.[20]  As a result, GEICO denied payment of covered PIP benefits to WPRC and RA without, according to Plaintiffs, reasonable justification.[21]

## C.    PROCEDURAL HISTORY[22]

On March 10, 2014, Ms. Green filed the initial class action complaint (the "Initial Chancery Complaint") against GEICO in the Delaware Court of Chancery.  The Initial Chancery Complaint alleged causes of action for injunctive relief, bad faith breach of contract, breach of duty of fair dealing, consumer fraud, and tortious interference with contract.  The Initial Chancery Complaint also sought class action status pursuant to Court of Chancery Rule 23.

GEICO filed its initial responsive pleading on April 14, 2014.  The case was dormant until February 2015.  At that time, the Court of Chancery requested a status report from the parties.  Ms. Green's counsel requested a stay pending the outcome of a motion to decertify classes filed in *Johnson v. GEICO Casualty Co.*, a similar case in the United States District Court for the District of Delaware (the "Delaware District Court").  In September 2015, the

---

[16] *Id.* ¶ 47.
[17] *Id.* ¶ 48.
[18] *Id.* ¶¶ 51, 58.
[19] *Id.* ¶¶ 52, 59.
[20] *Id.* ¶¶ 54, 61.
[21] *Id.* ¶¶ 55, 62.
[22] Unless otherwise noted, the procedural history is taken from the Geico's original motion to dismiss filed on May 4, 2017.

4

Delaware District Court decertified two previously certified classes. After being advised of the Delaware District Court's decision, the Court of Chancery conducted a status conference on November 3, 2015.

On December 11, 2015, Ms. Green filed an amended class action complaint (the "Amended Chancery Complaint"). The Amended Chancery Complaint added two additional plaintiffs, WPRC and RA, and replaced four of the five original counts. The Amended Chancery Complaint asserted claims for breach of contract, bad faith breach of contract, declaratory relief, and deceptive trade practices act violations.

GEICO then moved to dismiss the Amended Chancery Complaint. Following a hearing and additional briefing, Vice Chancellor Joseph R. Slights III dismissed the Amended Chancery Complaint for lack of subject matter jurisdiction on February 1, 2017. Plaintiffs then filed a timely election to transfer to this Court on February 24, 2017.

Due to administrative reasons regarding the transfer, Plaintiffs filed the complaint (the "Class Action Complaint") in this Court on March 20, 2017. The Class Action Complaint is essentially identical to the Amended Chancery Complaint, asserting the same claims for Breach of Contract, Bad Faith Breach of Contract, Declaratory Relief, and Deceptive Trade Practices Act violations.[23] The Class Action Complaint alleges class certification on behalf of all persons, including insureds and medical providers, whose claims for PIP benefits were denied or reduced as a result of the GRR and the PMR. The members of this class are referred to as "The Claimant Class" and the "The Insured Class."

---

[23] The only differences between the Amended Class Action Complaint and the present Class Action Complaint are: (i) the Amended Class Action Complaint requested an injunction requiring GEICO to recalculate all claims without using the Rules, which Plaintiffs have replaced with a request for damages resulting from GEICO's use of the Rules, and (ii) unlike the Amended Class Action Complaint, the present Class Action Complaint includes a request for punitive damages.

On April 4, 2017, GEICO moved to dismiss the Class Action Complaint through Defendant GEICO General Insurance Company's Motion to Dismiss Plaintiffs' Class Action Complaint (the "Original Motion"). On May 4, 2017, Plaintiffs opposed the Original Motion and filed Plaintiffs' Answering Brief in Opposition to Defendant GEICO General Insurance Company's Motion to Dismiss Plaintiffs' Complaint (the "Original Opposition"). GEICO filed Defendant GEICO General Insurance Company's Reply Brief in Support of its Motion to Dismiss Plaintiffs' Class Action Complaint (the " Original Reply") on May 4, 2017.[24] The Court held oral argument for the Motion on June 16, 2017 and took the matter under advisement.[25] On July 12, 2017, the Court granted a stipulation to allow Plaintiffs to file the Amended Complaint and rendered the pending motions moot.[26]

## D. PARTIES' CONTENTIONS

On August 1, 2017, Geico filed a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Motion"). On September 1, 2017, Plaintiffs filed their Opposition to Defendant Geico General Insurance Company's Motion to Dismiss Plaintiffs' Amended Complaint (the "Opposition"). On September 18, 2017, Geico filed its Reply Brief in Support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Reply").

### 1. Geico's Contentions

Geico argues that Plaintiffs cannot successively make a class certification because: (1) Plaintiffs have failed to allege any facts in support of the requirements of Rule 23 of the Superior Court Civil Rules ("Civil Rule __"); (2) Plaintiffs cannot maintain a class action under Civil

---

[24] Throughout the briefing the parties often refer to the present Class Action Complaint as the Amended Class Action Complaint, including in the title to the Motion, the Opposition, and the Reply, since the parties re-filed these documents from the Court of Chancery for purposes of the Motion.
[25] D.I. 27.
[26] D.I. 31.

Rules 23(b)(1)(A) or (b)(2) because the relief they seek is primarily monetary; (3) Plaintiffs cannot satisfy the requirements of Civil Rule 23(b)(3) as a matter of law;[27] and (4) Plaintiffs' class definitions proposed in paragraphs 64 and 80 of the Amended Complaint are facially deficient. Regarding class certification, Geico relies upon a federal class action case filed in the Delaware District Court and urges the Court to follow the federal case under the comity doctrine. Additionally, Geico claims that the allegations by WPRC and RA do not relate back to the Original Chancery Complaint.[28]

Geico also argues that Plaintiffs claims must fail on their merits. First, Geico contends that declaratory relief is not appropriate because the Delaware Insurance Code empowers the Insurance Commissioner to regulate insurers and enforce violations of the Delaware PIP statute, and that role cannot be subsumed by the Delaware Judiciary.[29] Second, Geico claims that Count IV for violations of the Deceptive Trade Practice Act fail to state a claim as a matter of law.[30] Third, Geico argues that the claims for breach of contract and bad faith breach of contract fail to state claims upon which relief can be granted.[31] Finally, Geico contends that Plaintiffs claim for punitive damages failed to state a claim upon which relief can be granted.[32]

### 2. *Plaintiffs' Responsive Contentions*

In the response, Plaintiffs claims that: (1) Geico bears the burden to show that the unilateral rules are reasonable and necessary; (2) comity and *stare decisis* have no application in

---

[27] Geico argues that the Plaintiffs cannot satisfy 23(b)(3) because: (1) individual questions will predominate over any common questions as a matter of law; (2) The principle of stare decisis and comity support dismissal of the class allegation; (3) Common questions can never predominate in a PIP claim for Breach of Contract; (4) Common questions can never predominate in a PIP claims for Bad Faith Breach of Contract; (5) Common questions can never predominate in a PIP claim Declaratory Judgment; and (6) Plaintiffs cannot satisfy the superiority and manageability requirements of Rule 23(b)(3) as a matter of law.

[28] Amend. Compl. at i-ii.

[29] Motion at 44.

[30] *Id.* at 48.

[31] *Id.* at 50.

[32] *Id.* at 55.

this case; (3) common questions predominate the breach of contract and bad faith claims; (4) a Declaratory Judgment action is appropriate; (5) this class action is the superior method based on the amount of recovery for each plaintiff and the action is manageable at this stage of litigation; (6) Plaintiffs' class definitions are sufficient; (7) the Amended Complaint related back to the Original Chancery Complaint; (8) Plaintiffs' challenge to Geico's Rules is not preempted by the Insurance Code or the Insurance Commissioner's powers; and (9) Plaintiffs pleaded sufficient evidence of deceptive trade practices to keep punitive damages at this stage of litigation.

## E. THE HEARING AND SUBSEQUENT COMMUNICATIONS

On December 1, 2017, the Court held a hearing (the "Hearing") regarding the Motion, Opposition, and Reply. At the Hearing, the Court reserved its decision pending a submission of the Insurance Commission's examination of Geico's claim processing. On January 2, 2018, Geico provided the Court the Delaware Department of Insurance's Report of Geico's claim processing (the "Insurance Examination").[33]

The Insurance Examination is dated February 29, 2016. The Insurance Examination focused on Geico's complaint handling, underwriting and rating, and claims. The examiners also conducted an examination of Geico's PIP review of personal auto PIP claims. The Insurance Examination reviewed PIP claims from July 1, 2015 through April 30, 2017. The Insurance Examination makes no mention of the Rules.

On January 16, 2018, Plaintiffs filed an letter in response to Geico's submission of the Insurance Examination.[34] Plaintiffs objected to the use or inclusion of the Insurance Examination in the Court's decision of the Motion. Essentially, Plaintiffs argue that the

---

[33] D.I. 45.
[34] D.I. 46.

8

Insurance Examination: (1) lacks any probative value; (2) is an unsworn hearsay statement; and (3) is a document outside the Complaint.

Geico filed an objection to Plaintiffs' January 16 letter on the same day.[35] Geico argues that it did not submit the Insurance Examination as an expert report or to show that the Department of Insurance approves the Rules. Rather, Geico submitted the Insurance Report to show how the Department of Insurance recently exercised its broad powers to conduct investigations into Geico's claim processing and that the Insurance Commissioner holds the power to conduct these investigations consistent with *Clark v. State Farm Mut. Ins. Co.*[36]

On January 26, 2018, Trinidad Navarro, Delaware's Insurance Commissioner, sent a letter to the Court (the "Commissioner's Letter").[37] Commissioner Navarro indicates that he is aware of this civil action and that it involves certain computer rules which automatically deny some PIP claims. Commissioner Navarro also notes that he knows that Geico submitted the Insurance Examination to the Court which examined Geico's claim processing for PIP claims. In the Commissioner's Letter, Commissioner Navarro states that the Insurance Examination does not reference or analyze Geico's use of the computer rules. In fact, Commissioner Navarro "further confirmed with the examiners that the Exam in no way addressed, and the examiners did not review or analyze, the Computer Rules at issue in this matter."[38] Commissioner Navarro provides that "I found the allegations and information set out in the pleadings concerning and as a result, I may consider further examination of GEICO for these particular claims handling issues and the Computer Rules specifically."[39]

---

[35] D.I. 47.
[36] 131 A.3d 806 (Del. 2016).
[37] D.I. 48.
[38] *Id.*
[39] *Id.*

On January 30, 2018, Geico filed a letter in response to the Commissioner's Letter.[40] On January 31, 2018, Plaintiffs objected to Geico's letter.[41]

Given the flurry of additional submissions subsequent to the Hearing, the Court considers January 31, 2018 as the date this matter was fully submitted for decision.

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[42] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[43]

## IV. DISCUSSION

Under Personal Injury Protection claims ("PIP"), insurers are required to pay for reasonable medical expenses.[44] The plaintiff bears the burden of proving that the medical expenses incurred are reasonable and necessary.[45]

### A.    COMITY AND *STARE DECISIS*

The Court may follow the doctrine of comity when two courts have "concurrent jurisdiction over the same matter."[46] The doctrine is not a legal rule but "an expression of one state's entirely voluntary decision to defer to the policy of another, especially in the face of a

---

[40] D.I. 49.
[41] D.I. 50.
[42] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[43] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[44] *See* 21 *Del. C*. § 2118.
[45] *Murphy v. United Services Auto Ass'n*, 2005 WL 1249374, at *2 (Del. Super. May 10, 2005).
[46] *Loucks*, 2017 WL 3225921, at *2 (citing 16 AM. JUR. 2d. *Conflict of Laws* § 11 (2015)).

strong assertion of interest by the other jurisdiction."[47]  The Delaware Supreme Court recognizes

and has applied the doctrine of comity.[48]  The Supreme Court has stated that "[c]omity permits

one state to give effect to the laws of a sister state, not out of obligation, but out of respect and

deference."[49]  The Court should apply the doctrine of comity to avoid conflicting rulings.[50]

A case similar to the instant action was filed in the Delaware District Court.  In *Johnson

v. Geico Casualty Co.*, the plaintiffs filed suit against Geico for their use of the same two rules.[51]

Initially, the Delaware District Court certified the class.  Later in the litigation, the Delaware

District Court reviewed the class and found that the plaintiffs could not maintain the class based

on a damage model which required significant individual inquiries.  The Delaware District Court

decertified the class because "even assuming that Geico's policies resulted in the classes' claims

being systematically denied and reduced, . . . individualized inquiries would be required to

determine whether each class member's individual claim was actually medically necessary and

their expenses reasonable."[52]    Although there were common issues of law and fact as to the

defendant's liability, the individual determinations regarding damages would predominate over

those common questions.[53]

Unlike *Johnson*, Plaintiffs have not yet moved to certify the class.  This civil action is just

in the initial pleading stages of litigation.  Although *Johnson* is persuasive in this case, Plaintiffs

have not presented any damage model or moved to certify the class.  At this stage in the

litigation, the Court—applying Civil Rule 12(b) standards—cannot find that Plaintiffs would be

---

[47] *Id.*
[48] *Corvel Corp. v. Homeland Ins. Co. of N.Y.*, 2015 WL 1021459 (Del. Mar. 6, 2015); *First Health Settlement Class v. Chartis Specialty Ins. Co.*, 2015 WL 1021443 (Del. Mar. 6, 2015).
[49] First Heath, 2015 WL 1021443, at *4.
[50] *Id.* at *6.
[51] *Johnson v. GEICO Casualty Co.*, 310 F.R.D. 246, 254 (D. Del. 2015), *aff'd*, 672 Fed. Appx. 150 (3d Cir. 2016).
[52] *Id.* at 251.
[53] *Id.* at 255.

unable to certify or maintain the classes in the light most favorable to the Plaintiffs. *See* Sections IV.B and IV.C below.

**B.     CLASS ACTION PREREQUISITES**

Civil Rule 23 governs class actions in this Court. Class actions can only be initiated if:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[54]

Civil Rule 23(a) is patterned after Federal Rule of Civil Procedure 23(a).

In *Johnson*, the Delaware District Court certified a class of insureds challenging the Rules.[55] When the Delaware District Court certified the class, the determination of damages was unclear and "would depend in part on individual class members' circumstances."[56] But, the Delaware District Court revisited the issue in a later decision and found that the trial plan required evidence of damages for each class member.[57] Although there may be common questions of law and fact as to the liability, the inquiry into damages for each class member would predominate the common questions.[58]

This Court recently issued a decision regarding a similar issue. In *Wilmington Pain & Rehab. Ctr., P.A. v. USAA Gen. Indem. Ins. Co.*, the plaintiffs, challenging two computer rules, sought class certification.[59] The first rule used the medical providers code and geozip code to

---

[54] Del. Super. Ct. R. Civ. 23(a).
[55] *Johnson*, 310 F.R.D. at 254.
[56] *Id.*
[57] *Id.*
[58] *Id.* at 255.
[59] C.A. No. N15C-06-218 JRJ CCLD, 2017 WL 8788707, at *2-3 (Del. Super. Ct., Oct. 17, 2017).

determine the reasonableness of the fee.[60]  Then, USAA used the 80th percentile rule.[61]  This

Court ruled that although there is a common question because all claims were subject to the two

rules, commonality under Rule 23(a) requires more than the use of the same rule.[62]  As in

*Johnson*, the *Wilmington Pain & Rehab. Ctr.* Court only denied the motion to certify (and/or

decertified) after the parties had engaged in discovery and the facts—after discovery—

demonstrated that the plaintiffs could not satisfy the requirements of Civil Rule 23(a) and (b).[63]

The Court finds that it is premature to dismiss this civil action before Plaintiffs have an

opportunity to engage in discovery and retain experts.  The courts in *Johnson* and *Wilmington

Pain & Rehab. Ctr.* did not dismiss those cases at the initial stages of the litigation.  The analysis

on Civil Rule 23 may depend on Plaintiffs' damages model.  It is not clear how Plaintiffs plan to

seek damages.  If they seek to get individual damages for each class member for the difference

between the insured's claim and the amount paid by Geico on that claim, then Plaintiffs'

individual issues may override the common questions.  However, at this point in the litigation,

Plaintiffs claim survives and the issue of class certification is premature.

C.      MAINTAINING CLASS ACTION

Once a class action is initiated, it may only continue if the prerequisites of paragraph (a)

are met and at least one of the requirements in paragraph (b) are met.  Paragraph (b) requires:

(1) The prosecution of separate actions by or against individual members of the
class would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual
members of the class which would establish incompatible standards of
conduct for the party opposing the class, or

---

[60] *Id.*
[61] *Id.* at *7-8.
[62] *Id.*
[63] *Id.* at *3-7.

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matter pertinent to the findings include:

(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) The difficulties likely to be encountered in the management of a class action.[64]

In the Motion, Geico argues that that the class cannot be certified. *See* discussion in Part V.A. The *Johnson* Court decertified the class because individual issues would predominate common issues of law and fact. *Johnson* and the Plaintiffs focused on subsection (3). But, it is unclear whether the Plaintiffs will move or maintain the class under a different subsection. Therefore, the Court does not find based on a Rule 12(b)(6) standard that Plaintiffs could not maintain a class under any circumstances.

---

[64] Del. Super. Ct. R. Civ. 23(b).

**D.    CLASS DEFINITIONS**

Geico claims that the class definitions in paragraphs 64 and 80 are facially deficient. Plaintiffs define the Claimant Class as all persons who submitted PIP claims to Geico after March 10, 2011, which were reduced or denied under the Rules.[65]  Additionally, Plaintiffs define the Insured Class as those insureds whose PIP claims were submitted by medical providers after March 10, 2011, which were reduced or denied under the Rules.[66]  The Claimant Sub-Class includes all medical providers who submitted claims to Geico on behalf of patients  after March 10, 2011, which were reduced or denied under the Rules.[67]

These definitions could include individuals that were insured by Geico at the time, submitted claims, but were properly rejected under the Rules.  If claims are reasonably and properly denied, then there is no argument those insured cannot seek damages in this lawsuit because those insureds properly denied have no standing in the case.  The class definitions do not presently limit the class to those members who suffered an improper denial based on the Rules. This "problem" can be rectified with an amended pleading after discovery or through a claim process.  Taking the allegations as true, Geico's use of the Rules created this dilemma.  As argued to the Court, Geico uses the Rules and does not individually analyze each claim. Therefore, no one, including Geico, knows which Geico customers had their claims properly rejected and those that did not have their claims properly rejected.  The Court will allow Plaintiffs, at this early stage of the proceedings, a chance to further refine this issue in discovery.

---

[65] Compl. ¶ 64.
[66] *Id.*
[67] *Id.* ¶ 80.

**E.** **ALLEGATIONS BY WPRC AND RA RELATING BACK TO THE FILING DATE OF THE ORIGINAL CLASS ACTION COMPLAINT**

Civil Rule 15 governs the amendment of pleadings.[68] Civil Rule 15 allows an amendment to a pleading to relate back to the original pleading if certain conditions are met: (1) a statute authorizes an amended pleading to relate back to the date of the original filing; (2) "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"; or (3) the amendment changes the name of a defendant if subsection (2) is met and (A) the new party received notice of the institution of the action and will not be prejudiced by entering the action, and (B) knew or should have known that absent a mistake, that party would have been named in the litigation.[69]

An amendment to the plaintiff may also be made under Rule 15(c). Rule 15(c) allows amendments to change or add plaintiffs "[a]s long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense."[70]

Geico argues that the claims for WPRC and RA should not relate back to the Initial Chancery Complaint. The Initial Chancery Complaint did not include WPRC and RA as plaintiffs. Geico notes that WPRC and RA could recover for incidents after from December 11, 2012–three years prior to Plaintiffs filing the Amended Chancery Complaint, the Class Action Complaint and, now, the Amended Complaint. However, if necessary, the Court can prevent

---

[68] Del. Super. Ct. R. Civ. 15.
[69] Del. Super. Ct. R. Civ. 15(c).
[70] *Child, Inc. v. Rodgers*, 377 A.2d 374, 377 (Del. Super. 1977), *aff'd in part, rev'd in part sub nom. Pioneer Nat. Title Ins. Co. v. Child, Inc.*, 401 A.2d 68 (Del. 1979).

16

that by limiting WPRC and RA to the recovery of damages for instances after December 11, 2012.

Although Plaintiffs changed from just Ms. Green to include the medical providers in the Amended Complaint, it appears that the claims arise from the same course of conduct and it does not appear that Geico suffered prejudice. All claims arise from Geico's use of the Rules to deny claims. Geico treats the medical providers the same as insured for claim purposes.[71] Therefore, there is no significant difference in the litigation of these matters.

Geico's ability to protect itself will not suffer prejudice. WPRC and RA were added to the Amended Complaint on December 11, 2015. Although Geico argues that the amendments increased the class, the amendment took place nearly two years earlier. In fact, the Plaintiffs have not moved to certify the class at this point. It does not appear that Geico would suffer harm in ability to defend itself.

## F.   PLAINTIFFS' STANDING AND THE INSURANCE COMMISSIONER

Geico argues that the Delaware judiciary does not have the authority to enforce violations of the insurance code, rather, that authority is vested with the General Assembly and the Insurance Commissioner. Geico relies upon *Clark v. State Farm Mut. Auto. Ins. Co.*[72] to support its argument. In *Clark*, plaintiffs brought a class action lawsuit against State Farm challenging State Farm's processing of claims.[73] Specifically, plaintiffs alleged that State Farm failed to make payments to plaintiffs within the statutory thirty-day period set forth in 21 *Del. C.* § 2118B ("Section 2118B").[74] Plaintiffs then sought leave to file an amended complaint seeking a declaratory judgment from this Court that State Farm must process all PIP claims within thirty

---

[71] Am. Compl. ¶¶ 52, 59.
[72] 131 A3d 806, 809 (Del. 2016).
[73] *Id.*
[74] *Id.*

days.[75]  This Court denied plaintiffs motion for leave to amend.[76]  The Court did this because it found that no case or controversy existed as State Farm had paid plaintiffs PIP benefits plus the required statutory interest.[77]  As such, the Court found that amending the complaint, under any factual circumstances, would be futile.[78]

Plaintiffs appealed the Court's decision.[79]  The *Clark* court affirmed the Court's decision, but on different grounds.[80]  The *Clark* court analyzed the language of Section 2118B(c) and concluded that the statute essentially gives an insurer two choices when processing PIP claims— (i) process the bill within thirty days, and avoid statutory interest, or (ii) pay the bill beyond the thirty days and pay statutory interest.[81]  Noticeably absent from the language of Section 2118B(c) is any directive asking the judiciary to "govern the operations of an insurer by dictating (in some form of complicated judicial decree) that it must process all claims within thirty days."[82]

In effect, the *Clark* court determined that Section 2118B provides its own remedy for late payment—the payment of the required interest—and that, under the statute, there was no further relief that could be fashioned for plaintiffs.[83]  Therefore, the *Clark* court rejected relief that sought to have the judiciary "act in the role of the Insurance Commissioner" or that sought to "read into Section 2118B(c) mandates that the General Assembly could have, but did not, adopt."[84]  The Delaware insurance code provided for a statutorily set interest rate if insurance

---

[75] *Id.*
[76] *Id.* at 810.
[77] *Id.*
[78] *Id.*
[79] *Id.* at 808.
[80] *See id.*
[81] *Id.*
[82] *Id.*
[83] *Id.* at 813.
[84] *Id.* at 816.

companies did not pay claims within thirty days.[85]  All other claims besides declaratory

judgment were withdrawn in the case.[86]

The *Clark* court noted that the statute already provided for a remedy if the insurers do not

pay within thirty days—payment plus interest.  As such, plaintiff could not seek a declaratory

judgment from this Court as to a remedy because plaintiffs' remedy already existed in the statute

through the interest rate.  The *Clark* Court further noted that the plaintiffs did not suffer any

personalized harm, rather, plaintiffs disagreed with the insurance companies practice of paying

claims late with the interest.[87]

GEICO cites *Clark* for the sweeping proposition that Delaware courts cannot govern the

operations of an insurer.  GEICO overstates the holding in *Clark.*  The *Clark* court addressed the

very narrow issue of whether declaratory judgment concerning the appropriate remedy for

violations of Section 2118B(c) when the legislature had clearly enumerated the available

remedies for violation of Section 2118B(c).  The *Clark* court then found that because the

legislature had already established a remedy for when an insurer failed to pay within thirty days

(payment plus interest), it would be improper for the judiciary to substitute its judgment and

compel payment within thirty days.

In this case, the statute does not enumerate an automatic remedy if Geico violates the

statute.  The Court has granted declaratory judgment in other civil actions relating to insurance

contracts and the insurer's liability.[88]  In this case, a breach of the implied covenant of good faith

and fair dealing is included in all contracts including insurance contracts.  Further, the parties in

---

[85] *Id.* at 808.
[86] *Id.* at 812.
[87] *Id.* at 813-14.
[88] *See, e.g., Monsanto Co. v. Aetna Cas. and Sur. Co.*, 565 A.2d 268, 273 (Del. Super. 1989); *Wilmington Pain & Rehab. Ctr., P.A. v. USAA Gen. Indem. Ins. Co.,* C.A. No. N15C-06-218 JRJ CCLD, 2017 WL 8788707, at *2-3 (Del. Super. Ct., Oct. 17, 2017).

19

this case would have suffered damages because their claims were denied, rather than delayed with the interest payment.

This case is also different from *Clark* because Plaintiffs allegedly suffered damages and were not made whole under the code or otherwise. Moreover, Geico has not remedied its purported breach of the contract or statute. Therefore, declaratory judgment would not undermine the General Assembly or the Insurance Commissioner's powers. In fact, the Insurance Commissioner stated in the Commissioner's Letter that the insurance code does not provide for any private enforcement action by his department. If Plaintiffs can factually develop their case, the Court finds that a declaratory judgment would be an appropriate remedy for the issues raised in this case.

## G.    FAILURE TO STATE A CLAIM

### i.    *Breach of contract, bad faith breach of contract, and declaratory judgment*

The Court has reviewed the factual allegations made in the Amended Complaint and finds that Plaintiffs have stated a claim under which Plaintiffs would be entitled to recover under a reasonably conceivable set of circumstances. Plaintiffs do not allege that Geico breached a specific provision of the insurance contract. Rather, Plaintiffs argue that Geico breached the implied warranty of good faith and fair dealing. The implied covenant requires a party to "refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[89] The implied covenant attaches to every contract, including contracts of insurance.[90]

---

[89] *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985) (internal quotations omitted).
[90] *Dunlap*, 878 A.2d at 441.

In *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, the Delaware Supreme Court appears to somewhat limit claims for breaches of the implied covenant of good faith and fair dealing.[91] "The implied covenant of good faith and fair dealing involves . . . inferring contractual terms to handle developments or contractual gaps that . . . neither party anticipated."[92] "It does not apply when the contract addresses the conduct at issue."[93]

At this stage in the proceeding, Plaintiffs sufficiently pleaded that Geico breached the implied covenant. Plaintiffs argue that the uniform denial or reduction of claims based on the Rules without any investigation violates the implied covenant and prevents the Plaintiffs from receiving the fruits of the bargain. Plaintiffs allege that Plaintiffs pay their premiums to Geico, but Geico refuses to pay claims or make reductions based on the Rules without further investigation. Additionally, Plaintiffs alleged that Geico does not disclose the Rules and refuses to revisit denied claims. If the insurance policies do not have a term requiring Geico to deny claims in good faith, it is likely that term will be incorporated into the insurance policies.[94]

### ii. WPRC and RA cannot bring a Deceptive Trade Practices Act claim against Geico

The Court finds that Plaintiffs have failed to state a Deceptive Trade Practices Act claim upon which relief could be granted. The Deceptive Trade Practices Act protects competing business from one another. "The Act is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business. Unlike the Consumer Fraud Act, the DTPA is not intended to redress wrongs between a business and its customers."[95]

---

[91] 112 A.3d 878, 896-99 (Del. 2015).
[92] *Id.* at 896.
[93] *Id.*
[94] *Dunlap*, 878 A.2d at 442-43 (finding that the covenant of good faith and fair dealing is not limited to "insurance company's obligations to fairly and promptly process and pay its insured's claims.").
[95] *Strong v. Wells Fargo Bank*, 2012 WL 6961995, at \*2 (Del. Super. Nov. 30, 2012) (citing *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993)).

Ultimately, to bring a claim under the DTPA, the plaintiff must have a "horizontal relationship"[96] with the other party because the DTPA is intended to only protect litigants "when such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practice of another."[97]

In this case, as alleged, WPRC and RA were acting in the same capacity as the insureds. Therefore, WPRC and RA were not in horizontal privity with Geico and cannot bring a DTP claim.

## H.    PUNITIVE DAMAGES

If the Court does not dismiss Plaintiffs' bad faith breach claim, Plaintiffs may seek punitive damages.  The Delaware Supreme Court has found that "insurance is different."[98]  The Court stated that insurer has to balance its interest in limiting the payout and the effect of a payment on the insurer's reputation.[99]

With an insurance contract, the insured makes premium payments and awaits counter-performance from the insurer if a claim for the insurance arises.[100]  Additionally, insurance contracts are different because the insured does not have an ability to cover if the insurer refuses to pay a claim without justification.[101]  Normally, the non-breaching party to a contract may find another party to perform in place of the breaching party.[102]  "With insurance this is simply not possible."[103]  This feature of insurance contracts distinguishes them from other contracts and justifies the availability of punitive damages for breach in limited circumstances."[104]  "As the

---

[96] *Grand Ventures, Inc.*, 632 A.2d at 70.
[97] *Id.*
[98] *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 447 (Del. 1996).
[99] *See id.*
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Id.*

22

law now stands, given the special nature of the insurance relationship, punitive damages are available as a remedy for bad faith breach of the implied covenant of good faith where the plaintiff can show malice or reckless indifference by the insurer."[105]

The factual record in this matter is not complete. Discovery has yet to complete. Based on the Complaint, the allegations lead to the possibility of the award of punitive damages based on Geico's conduct. However, as the factual record develops, punitive damages may no longer be viable for this action. As such, this issue is more appropriately addressed on a motion for summary judgment or pretrial request to preclude Plaintiffs from seeking punitive damages.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** the Motion. Defendants are permitted to reassert any relevant arguments during class certification. The Parties should contact the Court to schedule a status conference regarding class certification.

**IT IS SO ORDERED**.

*/s/ Eric M. Davis*
Eric M. Davis, Judge

---

[105] *Enrique v. State Farm Mut. Automobile Ins. Co.*, 142 A.3d 506, 512 (Del. 2016) (citing *Pressman*, 679 A.2d at 446-47); *see also Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 265 (Del. 1995) (stating "an insured may be entitled to the recovery of punitive damages in a bad faith action if the insurer's breach is particularly egregious.").